## Camden & Atlantic R. Co., Plff. in Err., v. Robert D. Coxe et ux.

The recitals of facts contained in a lease are evidence against the parties who executed it.

The principle which makes the ratification of the acts of an agent equivalent to precedent authority is applicable to corporations, and such ratification may be presumed from long acquiescence by the corporation and neglect to make objection.

Before one can recover against the guarantor of a bond, he must show that the principal debtor is insolvent and cannot pay.

In a suit against a corporation, upon undertakings to which is attached the seal of the corporation regularly attested, the defendant may show an unlawful or improper use of the seal by its officers, in which case it is not liable, upon the undertakings.

NOTE.—The guarantor of bonds of a corporation cannot be made liable without proof of demand and refusal to pay. Zeigler v. McFarland, 2 Pearson (Pa.) 234. The creditor must exercise due diligence to enforce payment from the principal, before he can compel payment by the guarantor. National Loan & Bldg. Asso. v. Lichtenwalner, 100 Pa. 103, 45 Am. Rep. 359. He is not bound, however, to first enforce the individual liability of stockholders. *Ibid.* One who guarantees the fulfilment of a contract,

It is not error to refuse to charge that, "there being no sufficient evidence of authority on behalf of the defendant (a corporation) to make the guaranty declared upon or as found in the bonds, the verdict should be for the defendant," if there was evidence that the defendant had authority from the legislature to make such guaranty; that it was made for a valuable consideration; and that the acts of the officers of the corporation in making it were acquiesced in by the stockholders for a period of ten years.

Upon the evidence of this case the president and secretary of a railroad company, held authorized to indorse upon bonds of another company a guaranty that they should be paid.

(Decided February 8, 1886.)

Error to the Common Pleas, No. 4, of Philadelphia County to review a judgment for plaintiffs.   Affirmed.

A statement of the facts of the case appears in the following opinion of the court below:

THAYER, P. J.:   The plaintiffs sued the defendant upon a number of coupons, representing the interest due on certain bonds issued by the May's Landing & Egg Harbor City Railroad Company in 1871, the payment of which interest, it was alleged, had been guaranteed by the defendant.   The bonds which were put in evidence bore the following indorsement, under the seal of the Camden & Atlantic Railroad Company:

Payment of the principal and interest of the within bond is guaranteed by the Camden & Atlantic Railroad Company.
>                                     Robert Frazer,
              President Camden & Atlantic Railroad Company.

Attest:  H. Whiteman, Secretary.

By an article of agreement entered into between the two companies, dated November 3, 1871, it was agreed that the May's Landing & Egg Harbor City Railroad Company should build a line of railroad from Egg Harbor city to May's landing, the

which has not been executed or accepted by the parties intending to give credit on the guaranty, is entitled to notice of the acceptance within a reasonable time.   Coe v. Buehler, 110 Pa. 366, 5 Atl. 20.   The guaranty must be in writing, and parol testimony is not admissible to aid or to supplement the writing in order to complete an insufficient written promise.   Thus, it could not be shown that the letters "O. K." were intended as a guaranty. Moore v. Eisaman, 201 Pa. 190, 50 Atl. 982.

As to necessity of notice of default to bind guarantor, see editorial note to Heyman v. Dooley, 20 L. R. A. 257.

same to be constructed "according to specifications to be first submitted to and approved by the president of the Camden & Atlantic Railroad Company." The road was to be paid for by the issue of $32,500 of stock and $37,500 of first-mortgage bonds, to be issued by the constructing company. It was stipulated in the agreement that, when the road should be built, the May's Landing & Egg Harbor City Railroad Company should give, demise, and surrender all its estate and interest in the road to the Camden & Atlantic Railroad Company for the term of nine hundred and ninety-nine years, in consideration of which the latter company agreed to pay $2,675 annually for the first five years, and thereafter $5,000 annually for the residue of the said term, and also the taxes of the May's Landing & Egg Harbor City Railroad Company. The agreement contained this further stipulation: "It is further understood and agreed that the coupons on the said mortgage bonds to the amount above mentioned shall be paid by the Camden & Atlantic Railroad Company, out of the said annual rent, on the production and presentation of the same by the bondholders at the office of the said company, who shall retain for that purpose so much of said rent, and shall be credited therefor." The agreement also contained the following clause: "It is further understood and agreed that the said Camden & Atlantic Railroad Company is not to become responsible for the interest on the said mortgage bonds, until the whole amount of the said stock and bonds shall have been sold."

In pursuance of this agreement, the road was built at a cost of $70,000, the money being obtained by the issue of the stock and bonds already mentioned; and by indenture, dated June 1, 1872, the May's Landing & Egg Harbor City Railroad Company executed to the defendant a transfer of the road, by which it formally "granted, bargained, sold, surrendered, and demised" the same to it, with all the rights, privileges, and franchises for the term of nine hundred and ninety-nine years." On June 20, 1872, the lease was formally approved by the directors of the Camden & Atlantic Railroad Company.

In consequence of an oversight of the parties, this lease was not recorded in the office of the secretary of state, as required by the laws of New Jersey, and, its validity being supposed to be affected by the omission, the parties, on June 26, 1873, for the purpose of confirming it and of carrying out their original

purpose, executed a new instrument of like tenor, reciting all the foregoing facts; and these recitals are evidence against the defendant. Schuylkill & D. Improv. & R. Co. v. McCreary, 58 Pa. 304; Garwood v. Dennis, 4 Binn. 314; Greenl. Ev. § 23.

It further appeared by the evidence that the defendant had, under these agreements, taken possession of the May's Landing & Egg Harbor City road and operated it for about ten years. During this period it had also paid the rent and the interest coupons regularly. During the same time a printed report of the treasurer of the company, "containing a reference to all of its money transactions," was presented annually to the stockholders at their meetings, and also distributed to each of them by mail. In 1882, the road having ceased to be profitable, the defendant ceased to operate it and refused to pay the interest coupons or the rent. It now attempts to repudiate the lease and its obligation to pay the interest on the bonds, upon the ground that neither was authorized by the stockholders. Upon examination of the minutes, nothing appeared upon them to show that the lease had ever been presented to the stockholders, or had ever been acted upon by them as a body until 1881, when they resolved to disaffirm it. That it was expressly authorized by the board of directors at the time of its execution distinctly appeared, as has been already stated. Whether the original agreement of November 3, 1871, under which the road was built and in pursuance of which the lease was executed, was ever before the stockholders did not appear; nor is it, in our opinion, of much consequence now whether it was or was not. After having taken possession of the road, operated it, and received its earnings for ten years, in pursuance of the agreements made by the board of directors and authorized agents, the jury were fully justified in finding that they had by their actions ratified and confirmed those agreements. It is too clear to admit of doubt that the lease bound them to "the payment of the interest accruing from time to time on the bonds," for it is so expressly covenanted therein, and the clause in the original agreement which stipulated that they should not "become responsible for the interest on the bonds until the whole amount of the stock and bonds shall have been sold" confirms and clinches it, if it required confirmation. The payment of the interest coupons for ten years, spread before them annually in the reports of the treasurer, was sufficient evidence to bring home to them knowl-

edge of the facts. To suppose that they were ignorant of them is to suppose that they were ignorant that the Camden & Atlantic company was using and operating the May's Landing & Egg Harbor City road during all those ten years, in which the receipts and expenditures of the company on that account were annually set before it by the treasurer in his printed report. The presumption that they knew all about it, although a presumption of fact to be found by a jury, is an overwhelming presumption, in view of all the facts, for the least inquiry into the payments appearing in the treasurer's reports must have disclosed the fact that he was paying the coupons because the company had guaranteed them. To say now, after this course of business has been carried on for the period of ten years, that they did not know of the guaranty of the interest given by the company, or of the reason why the interest was regularly paid semi-annually out of the treasury, is to say what is extremely improbable and difficult of belief.

But it is argued that, although the company—that is, the stockholders—may have known of the undertaking in the lease to pay the interest on the bonds, which undertaking was expressly authorized by their board of directors, yet they may not have known of the written guaranty which was indorsed upon the bonds and attested by the seal of the company and the signatures of their president and secretary. But it is to be remembered that the original agreement of November 3, 1871, between the two companies, which is recited in the lease and in pursuance of which the lease was executed, contained a similar agreement, by which the Camden & Atlantic Railroad Company bound itself to pay the interest on these bonds. This agreement was executed before the May's Landing & Egg Harbor road was built. It was entered into for the purpose of enabling the latter company to build the road, which was, immediately upon its completion, to be handed over to the Camden & Atlantic company.

It fixed the cost of construction at $70,000, and stated that this sum was to be raised by the issue of $32,500 of stock and $37,500 of bonds of the May's Landing & Egg Harbor City Railroad Company; and then proceeded to stipulate that the Camden & Atlantic company should be responsible for the interest on those bonds and would pay the coupons for that interest to the bondholders, on presentation of the same at its office, as part

of the rent which it was to pay for its lease. As these bonds were issued when the work of construction was about to be commenced, it is not saying too much to say that the bondholders who loaned their money for the construction loaned it with the knowledge that the Camden & Atlantic company had undertaken to pay the interest, in consideration of getting the road, and that it loaned it upon the faith of the defendant's undertaking. Under all the circumstances, what was the defendant's undertaking in the agreement of November 3, 1871, but an undertaking that it would guarantee the interest upon the bonds which were to be issued? Could it have said in plainer language to the public, "The May's Landing & Egg Harbor City Railroad Company are about to build a road for us? To raise the money to build it, it must borrow $37,500 on their bonds, and as we are to get the road when it is built, we have undertaken, as part of the consideration we are to pay for it, to be responsible for the interest upon those bonds, and to pay it at the office of our company upon presentation of the coupons." What was this but a guaranty of the interest by the defendant?

The defendant company was fully authorized by the act of the New Jersey legislature to execute such a guaranty as that evidenced by the seal of the corporation and the signatures of its administrative officers, and it was entered into for a valuable consideration which the company received. By means of that guaranty, the money was raised which built the road. On the faith of it the defendant was given possession of it when it was completed, used it, and gathered the receipts for ten years. That it was annually informed by the report of its treasurer, of the amount of those receipts and the manner in which they were disbursed, is a fair inference from the testimony of its secretary that the annual reports presented to the stockholders "contained a reference to all the money transactions of the company." Under all the circumstances of the case, therefore, the court is of the opinion that it was properly left to the jury to say, upon the evidence, whether the defendant had not knowledge of the guaranty, and whether it did not by its conduct ratify and confirm the undertaking which made it responsible for the payment of the interest coupons. The principle which makes a ratification equivalent to a precedent authority is as applicable to corporations as to natural persons, and that such ratification may be presumed from long acquiescence by the

corporation and neglect to make objection is also established by abundant authority. Gordon v. Preston, 1 Watts, 385, 26 Am. Dec. 75; Kelsey v. National Bank, 69 Pa. 426.

The insolvency of the May's Landing & Egg Harbor City Railroad Company was fully shown at the trial, and, indeed, was not controverted or denied by the defendant. There was no necessity, therefore, according to the well-settled rule of law upon that subject, that the plaintiffs should proceed against it before suing the defendant.

The counsel for the defendant requested the judge to charge:

"There being no sufficient evidence of authority on behalf of the defendant to make the guaranty declared upon, or as found on the bonds, the verdict should be for the defendant."

Which the learned judge refused and declined to do, and charged the jury as follows:

"This action is brought to recover the amount of certain coupons of the May's Landing & Egg Harbor City Railroad Company. It is not brought against that company, however, but against the Camden & Atlantic Railroad Company which, it is alleged, guaranteed their payment, and the principal question before you relates to the validity of this alleged guaranty. The contract of guaranty is a contract by one to pay the debt of another, called the principal debtor, upon this contingency, —that the creditor cannot obtain payment from the principal debtor; and before recovery can be had on such a contract the plaintiff must show that the principal debtor is insolvent and cannot pay. There is no evidence here that the plaintiffs ever proceeded by suit against the May's Landing & Egg Harbor City Railroad Company for the coupons, and it is alleged in excuse that the company had no means of payment; that it was insolvent.

"There are two questions here for determination. The first is, whether the guaranty of the defendant was ever duly authorized by it in such a way as to make it legally responsible; and, if the guaranty was not authorized in the first place, then did the defendant, with knowledge of the guaranty, subsequently acquiesce in or ratify it by its acts? The other question is: Was the May's Landing & Egg Harbor City Railroad Company without means to pay the coupons, if a suit had been brought against it, or was it insolvent? If you find it was able to pay, you need go no further; your verdict must be for the defendant.

If you find it was insolvent, or not able to pay, that will bring you to the other question; that of the guaranty. The defendant contends there was no express authority from it for such a contract, and that the president and secretary undertook to act for the company without authority. To the guaranty as indorsed on the bonds is affixed the defendant's seal, regularly attested; and this standing alone imports the contract was regular; but, notwithstanding the seal, the defendant may show that an unlawful or improper use of it was made by its officers; and if it does show that, the contract is unlawful and the defendant is not liable for it. If, however, it was cognizant of the act of the president and secretary and they subsequently acted only in a manner consistent with a purpose to ratify this act, the company is as much bound as if its authority had been given originally for the action of its officers.

"The defendant has shown that the guaranty was never authorized at or submitted to a stockholders' meeting; and that when the lease of the May's Landing & Egg Harbor City road was considered subsequently, in 1881, it was disavowed; and that soon after the directors resolved to refuse payment of interest upon the bonds of the May's Landing & Egg Harbor City Railroad Company; and that it was in consequence of this that the company has refused, since 1881, to pay the coupons in suit. The lease which has been put in evidence provides that the defendant shall pay the rent there named, and it agrees that it will pay the coupons of the mortgage bonds issued by the May's Landing & Egg Harbor City Railroad Company out of the rent, on the presentation of the coupons at the office of the defendant company, which shall for that purpose retain so much of the rent to be credited therefor. It is in evidence that the defendant operated the May's Landing & Egg Harbor City road under this lease for ten years, before the lease was disavowed at the stockholders' meeting; and during that time rent was paid by the defendant, and the defendant paid the coupons of the bonds of the May's Landing & Egg Harbor City Railroad Company up to April, 1881. The defendant alleged that this payment of the coupons was consistent with its full knowledge of the lease, but not of any knowledge of the guaranty, and, if there is nothing in the lease about a guaranty of the coupons, that may be true; for a payment of the coupons and crediting such to the rent, under the lease, would not of itself and of necessity import

a knowledge of the guaranty, if the company was ignorant of the undertaking in the lease.

"Upon the evidence of the act of the officers of the defendant in making the guaranty of the lease, of the management under it of the leased road, of the payment of rent, of the payment of coupons of the May's Landing & Egg Harbor City Railroad Company bonds by the defendant, and upon all the testimony in this connection, I leave it to you to say whether or not the defendant company had knowledge of the guaranty of the coupons, and, having such, whether it acquiesced in it. And if you find the May's Landing & Egg Harbor City Railroad Company was insolvent, and that the defendant company had knowledge of the guaranty made by its officers and acquiesced in or ratified it, as I have explained, your verdict should be for the plaintiffs; but if you fail to find either of these facts, then your verdict should be for the defendant."

The jury returned a verdict for plaintiffs, and from the judgment entered thereon defendant brought error.

*David W. Sellers,* for plaintiff in error.—The cases in which corporations have been liable for the acts of their officers have been those in which there was either an antecedent specific authority to do the thing, or where the act was done by its officers in the presumption that they were acting as its agents in the execution of its undoubted corporate powers. Com. *ex rel.* Hamilton v. Pittsburgh, 34 Pa. 496; Com. *ex rel.* Reinboth v. Pittsburgh, 41 Pa. 278; Com. *ex rel.* Whelen v. Pittsburgh, 88 Pa. 66; Bank of Kentucky v. Schuylkill Bank, 1 Pars. Sel. Eq. Cas. 247; Mount Holly Paper Co.'s Appeal, 99 Pa. 513.

*Hanson,* for defendants in error.—The act of assembly, conferring power upon any railroad company to guarantee the bonds of the May's Landing & Egg Harbor City Railroad Company was in evidence. Under this act, it was lawful for the Camden & Atlantic Railroad Company to so guarantee, and its guaranty indorsed on the bonds was prima facie evidence of corporate authority and action in that behalf. Scottish & N. E. R. Co. v. Stewart, 3 Macq. H. L. Cas. 382.

This being a lawful contract by the company, its administrative officers had, by virtue of their office, full authority to make it; for, unless restrained by charter or by-law, the directors and officers may do what the company has power to do.

Zabriskie v. Cleveland, C. & C. R. Co. 23 How. 381, 16 L. ed. 488; Opdyke v. Pacific R. Co. 3 Dill. 55, Fed. Cas. No. 10,546.

An individual whose employees were acting in the line of the execution of their office would be liable for their acts on the ground of actual or imputed knowledge of them, and a corporation is liable to an equal degree. Orleans v. Platt, 99 U. S. 676, 25 L. ed. 404.

Knowledge of the payment of rent opened the door to knowledge of the lease, and that gave information of the guaranty. This knowledge for nine years, without objection from the company or its stockholders, and while the lease was profitable or expedient for the Camden & Atlantic Railroad Company to maintain, more than justified, it compelled the conclusion that the guaranty was acquiesced in and ratified. Gordon v. Preston, 1 Watts, 385, 26 Am. Dec. 75.

The measure which makes ratification equivalent to a precedent authority is as much predicable of ratification by a corporation as it is of ratification by any other principal, and it is equally to be presumed from the absence of dissent. Kelsey v. National Bank, 69 Pa. 426, to the same effect.

Securities like these bonds are, in Pennsylvania, negotiable, and have the legal properties of commercial paper. Gibson v. Lenhart, 101 Pa. 522; Mason v. Frich, 42 Phila. Leg. Int. 90.

Where a corporation has lawful power to issue such securities and does so, the bona fide holder is not bound to look beyond the question of their execution. San Antonio v. Mehaffy, 96 U. S. 312, 24 L. ed. 816; Orleans v. Platt, 99 U. S. 676, 25 L. ed. 404; and Com. *ex rel.* Hamilton v. Pittsburgh, 34 Pa. 496–519.

The plaintiffs below, in fact, acquired the bonds and coupons bona fide and for value; and, as holders of them, it is presumed that they so acquired them. Douglas County v. Bolles, 94 U. S. 104, 24 L. ed. 46; Montclair Twp. v. Ramsdell, 107 U. S. 147, 27 L. ed. 431, 2 Sup. Ct. Rep. 391.

PER CURIAM:

There was no error in the refusal of the court to charge as requested by the counsel for the defendant below. There was evidence of authority in the company to make the guaranty in question, amply sufficient to justify the finding. The bonds were negotiable, and the guaranty indorsed thereon passed with the bonds to the holder thereof.

Judgment affirmed.